# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————

№ 16-CV-2148 (JFB) (AYS)

———————

GEORGE NASH,

Plaintiff,

VERSUS

COUNTY OF NASSAU, ET AL.,

Defendants.

———————

**MEMORANDUM AND ORDER**
March 25, 2019

———————

JOSEPH F. BIANCO, District Judge:

Plaintiff George Nash brings this case against defendants Nassau County, the Nassau County Police Department ("NCPD"), Acting Police Commissioner Thomas Krumpter, Police Officers David Ditieri, Craig Berge, Shaun Michels, Thomas Houghton, Michael Spadaccini, Lieutenant Marc Timpano, and Sergeant Adam Fischer (collectively, "defendants"). The case stems from plaintiff's October 4, 2013 arrest by the Nassau County Police following a domestic disturbance at the residence plaintiff shared with his then-spouse, Donna Nash. Plaintiff alleges that the police lacked probable cause to arrest him and brings claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution, official misconduct, failure to supervise, and failure to punish.[1]

This lawsuit focuses upon the arrest and prosecution of plaintiff for the events on October 4, 2013, when his then-spouse alleged that plaintiff assaulted her at their home, threatened her life, and made her fear for her safety and that of their daughter.

———

[1] At oral argument, plaintiff's counsel made clear that he was not attempting to assert an independent claim for "official misconduct" or a due process claim based upon the taking of plaintiff's guns. In any event, any such claims could not survive summary judgment because no civil cause of action exists for official misconduct and there are no allegations (or evidence) that could support a due process claim under Section 1983.

On June 1, 2018, defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, defendants' motion is granted in its entirety. The Court concludes that, based upon the undisputed facts, there was probable cause to arrest plaintiff as a matter of law. Specifically, even in plaintiff's version of the events, it is undisputed that, before plaintiff was arrested, defendants Spadaccini, Ditieri, Berge, and Michels responded to the scene because plaintiff's then-spouse Donna Nash called 911 regarding a domestic disturbance, that Donna Nash made a sworn statement that plaintiff assaulted her, threatened her life, and that she feared for her safety and that of her daughter, and that defendants did not learn of, or observe anything, at the scene that undermined Donna Nash's credibility. Those sworn assertions by Donna Nash were sufficient to establish probable cause to arrest and prosecute plaintiff for Misdemeanor Assault in the Third Degree With Intent to Cause Physical Injury, in violation of New York Penal Law § 120.00 and Misdemeanor Menacing in the Third Degree, in violation of New York Penal Law § 120.15. Absent circumstances calling Donna Nash's report into question at the time of the arrest, the responding officers were not required to engage in further investigation before arresting plaintiff.

Plaintiff disputes the truth of Donna Nash's report and asserts that relationships between Donna Nash and her neighbor, and between the neighbor and members of the NCPD created bias on the part of the officers, causing them to believe Donna Nash and arrest plaintiff absent probable cause. As a threshold matter, although Donna Nash called the police from the neighbor's home, plaintiff has failed to put forth any evidence that the arresting officers had any knowledge of an alleged romantic relationship between the neighbor and Donna Nash. In any event, even assuming *arguendo* that the arresting officers were aware of that relationship, there is no evidence in the record (even construing the evidence most favorably to plaintiff) from which a rational jury could conclude that the defendants had any basis to question the veracity of Donna Nash's sworn statement. In short, there is no evidence of any agreement by the neighbor and Donna Nash to falsely implicate plaintiff in these crimes and, in any event, there is no evidence that the arresting officers would have had any knowledge of such collusion. This wholly speculative theory is insufficient to create a material issue of disputed fact that would preclude summary judgment.

Even assuming *arguendo* that there was not probable cause to arrest and prosecute, the individual defendants are entitled to qualified immunity because, even under plaintiff's version of the information available to the police on that date and drawing all reasonable inferences in plaintiff's favor, officers of reasonable competence could disagree over whether there was probable cause to arrest. Although plaintiff would like to second guess the officers' decision to arrest without further investigation, a reasonable police officer thrust into this potentially volatile situation even under the factual circumstances as described by plaintiff—regarding a domestic dispute that caused his then-spouse, per her sworn statement, to allege assault and fear for her safety—could reasonably conclude that probable cause existed for the arrest and prosecution of plaintiff for Misdemeanor Assault in the Third Degree With Intent to Cause Physical Injury and Misdemeanor Menacing in the Third Degree.

Finally, because there is no underlying constitutional violation because of the existence of probable cause, the *Monell* claims against Nassau County also cannot survive summary judgment.

I. BACKGROUND

A. Factual Background

The following facts are taken from the parties' depositions, declarations, exhibits, and respective Local Rule 56.1 statements of facts.[2] Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Thus, with regard to defendants' motion for summary judgment, the Court shall construe the facts in favor of plaintiff.

On October 4, 2013, Nassau County Police Department officers responded to a domestic disturbance at the residence that plaintiff shared with his then-spouse Donna Nash. (Defs.' 56.1 ¶ 5.) Before NCPD officers arrived, plaintiff left the premises and went to his mother's home nearby. (*Id*. at 11.) At the time of the incident, plaintiff had several licensed firearms, all of which he stored at his mother's home. (Nash Dep. at 21:16-17.)

Upon his arrival at the scene, NCPD Officer Ditieri spoke to Donna Nash, who provided the following sworn statement for the purposes of the New York State Domestic Incident Report:

> I returned home from work and went down to my office. My husband George Nash came down and a verbal argument ensued regarding our divorce. George then became enraged to the point that he grabbed me by the face and pushed me over the chair, I was seated when he grabbed me. After George let go he left the room and I grabbed my cell phone to call 911. When he found out I called 911 he said "I will kill you, I will gut you. If you call the cops I have nothing to lose I will kill you." He also threatened to harm our daughter in the same way but I do not remember his exact words. My lower jaw is in pain from when he grabbed me. I am in fear for my personal safety as well as my daughter's personal safety. I want him arrested for grabbing me and threatening mine and my daughter's life.

(Defs.' 56.1 ¶ 5; Reissman Dec., Ex. B at 1.) Officer Ditieri's narrative of the investigation, based upon the inverview of Donna Nash, noted that plaintiff "pushed and then grabbed victim by the face . . . let victim go and then stated 'I will kill you' and 'I will gut you,'" "threatened to injure their daughter Megan," and that Donna Nash "ha[d] pain in her jaw from the altercation and [wa]s in fear of her safety," "requested an arrest," and "refused medical treatment at scene." (Reissman Dec., Ex. B at 2.)

When patrol supervisor Officer Berge arrived, Officer Ditieri reported to him that, "[i]t's a domestic dispute, husband and wife, that the husband has some hand guns and he

---

[2] Unless otherwise noted, where one party's Local Rule 56.1 statement is cited, the opposing party does not deny the assertion or does not support its denial or objection with admissible evidence.

3

threatened to kill his wife and he fled the scene and she was fearful that he was going to come back and kill her." (Defs.' 56.1 ¶ 9, quoting Berge Dep. at 7:8-18.) Donna Nash also told Officer Berge that "in her mind, plaintiff left the scene to go to his mother's house in Massapequa, where plaintiff's handguns were stored, and return with a handgun to kill her." (Defs.' 56.1 ¶ 10, citing Berge Dep. at 7:20-8:11.) Officers did not interview either of the Nash children, both of whom were home at the time of the incident. (Pls.' 56.1 ¶ 16.)

Officers Ditieri and Berge went to plaintiff's mother's home, where they were informed that he had left; while en route back to the scene from plaintiff's mother's home, they learned that plaintiff had returned to his residence. (Berge Dep. at 9:17-10:15.) They returned to the scene, where plaintiff was then handcuffed and placed in the back of a squad car. (Berge Dep. at 12:12-20.) When Officers Spadaccini and his assisting officer, Officer Michels, arrived, Officer Ditieri told Officer Spadaccini that plaintiff had assaulted Donna Nash and their daughter. (Spadaccini Dep. at 15:5-7.) Based on the information provided by Officer Ditieri and contained in the Domestic Incident Report, Officer Spadaccini arrested and charged plaintiff with Misdemeanor Assault in the Third Degree With Intent to Cause Physical Injury in violation of New York Penal Law § 120.00 and Misdemeanor Menacing in the Third Degree in violation of New York Penal Law § 120.15. (Spadaccini Dep. at 28:15-30:2; Defs.' 56.1 ¶ 13; Reissman Dec., Ex. E.) On September 14, 2015, plaintiff was acquitted of all criminal charges by Judge Helen Voutsinas. (Pls.' 56.1 ¶ 21.)

In his 56.1 Statement, plaintiff alleges that Donna Nash was in a romantic relationship with their neighbor. *See* Pls.' 56.1 ¶ 9 (alleging the neighbor was Donna Nash's "paramour"). Further, he asserts that the neighbor was friends with defendant Marc Timpano (*id*. ¶ 14), cousin of the former head of the Patrolmen's Benevolent Association in the area (*id*. ¶ 15), and knew several of the responding officers because they "turned out" – that is, picked up their squad cars – at the North Massapequa firehouse, where the neighbor was a volunteer firefighter (*id*. ¶ 13). Plaintiff further asserts that Donna Nash went to the neighbor's house after the alleged assault on October 4, 2013, and called 911 from his house. (*Id*. ¶ 10.) Plaintiff asserts that the neighbor's relationship with Donna Nash and the police affected the police officers' decisions with respect to plaintiff, including the decision to arrest. There is no evidence in the record that the responding officers were aware of any alleged relationship between the neighbor and Donna Nash, or that they were pressured by Lieutenant Timpano or anyone else to effectuate plaintiff's arrest.[3]

B. Procedural History

On April 29, 2016, plaintiff brought this action, naming Nassau County, the Nassau County Police Department, Commissioner Thomas Krumpter, Police Officers David Ditieri, Craig Berge, Shaun Michels, Thomas Houghton, Michael Spadaccini, Lieutenant Marc Timpano, and Sergeant Adam Fischer as

---

[3] The Court notes that plaintiff's 56.1 Statement contains no citations to the record. However, even assuming there was evidence in the record to support each of the factual assertions asserted therein (as opposed to the speculative conclusions and arguments), the Court concludes that the evidence does not create material issues of disputed facts as to the claims in this case, for reasons discussed *infra*.

4

defendants. Plaintiff alleges that, under 42 U.S.C. § 1983, his arrest and prosecution violated his Fourth and Fourteenth Amendment rights. (Compl. ¶¶ 52-72.) He also asserts claims under Section 1983 that defendants engaged in official misconduct, failed to adequately supervise their subordinates, and that Nassau County and Nassau County Police Department maintain customs, policies, and practices involving failure to train and supervise against, investigate, and punish unconstitutional conduct by its officers. (*See id*. ¶¶ 73-93.)

Following discovery, defendants moved for summary judgment, and the motion was fully briefed. The Court held oral argument on the motion on September 20, 2018. At oral argument, plaintiff requested that he be allowed to submit additional briefing on the issue of any evidence in the record regarding relationships between defendant officers and plaintiff's neighbor. The Court granted the request, and plaintiff made an additional submission on September 21, 2018. The matter is now fully submitted.

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).

The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or

facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III. DISCUSSION

#### A. Plaintiff's Claims Under 42 U.S.C. § 1983

Plaintiff brings claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution, official misconduct, failure to supervise, and failure to punish. As set forth below, defendants are entitled to summary judgment on these claims because the responding officers had probable cause to arrest and prosecute plaintiff based upon the uncontroverted evidence in the case regarding the sworn statement by Donna Nash and the absence of any basis to question her veracity.

#### 1. Nassau County Police Department

As a threshold matter, the Court concludes that the Nassau County Police Department is not a proper defendant for any of plaintiff's Section 1983 claims.[4] It is well settled that an entity such as the Nassau County Police Department is an "administrative arm" of the same municipal entity as Nassau County and thus lacks the capacity to be sued. *See, e.g.*, *Caidor v. M&T Bank*, No. 5:05-CV-297, 2006 U.S. Dist. LEXIS 22980, at *6-7 (N.D.N.Y. Mar. 27, 2006) ("'Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.'" (quoting *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002))); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing claim against Lynbrook Police Department because "[u]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued"). Accordingly, summary judgment is warranted in favor of the Nassau County Police Department.

#### 2. Claims for False Arrest and Malicious Prosecution

To prevail on a claim under § 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (false arrest) and *Conway v. Village of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984) (malicious prosecution)).

---

[4] The Court notes that plaintiff did not address this argument in his opposition, and thus, while the Court has the discretion to deem it abandoned, it nonetheless has conducted the applicable analysis.

### a. False Arrest

#### i. Applicable Law

The Second Circuit has established that "'[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant*, 101 F.3d at 852). In general, probable cause is established where "the [arresting] officer has 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Finigan v. Marshall*, 574 F.3d 57, 62 (2d Cir. 2009) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)); *see also Weyant*, 101 F.3d at 852 (citing *Dunaway v. New York*, 442 U.S. 200, 208 n.9 (1979) (additional citations omitted)). Furthermore, "[t]he validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Peterson v. Cty. of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967)). "Rather, the court looks only to the information the arresting officer had at the time of the arrest." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Moreover, a determination of probable cause is based upon the "totality of the circumstances, and where law enforcement authorities are cooperating in an investigation . . . , the knowledge of one is presumed shared by all." *Calamia v. City of N.Y.*, 879 F.2d 1025, 1032 (2d Cir. 1989) (internal citations and quotations omitted); *see also Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1982)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." *Weyant*, 101 F.3d at 852 (citations omitted).

#### ii. Application

Applying that standard here, even construing the evidence most favorably to plaintiff, no reasonable jury could find that the responding officers lacked probable cause to arrest plaintiff based upon the undisputed facts.

Plaintiff does not dispute that, when Officer Ditieri arrived at the scene, Donna Nash told him that plaintiff had assaulted her, threatened her life, and that she feared for her safety and that of her daughter; specifically, that she thought plaintiff had gone to his mother's house to retrieve a firearm. (Defs.' 56.1 ¶ 10.) Further, Donna Nash made a sworn statement recorded in the Domestic Incident Report narrating the assault and threat. (Reissman Dec., Ex. B.) With regard to the threat, in addition to asserting in her sworn statement that plaintiff had said "I will kill you, I will gut you," (*id.*), Donna Nash told Officer Ditieri that plaintiff "threatened to kill [her] and he fled the scene and she was fearful that [plaintiff] was going to come back and kill her," which Officer Ditieri relayed to Officer Berge, (Berge Dep. 7:8-18), and which Officer Spadaccini recorded as the basis for plaintiff's arrest (Reissman Dec., Ex. A). Thus, it is undisputed that Donna Nash reported to the police that plaintiff had assaulted her and threatened her life.

It is well settled that probable cause can

exist solely based on information from an alleged victim—such as Donna Nash here—"unless circumstances raise doubt as to the person's veracity." *Curley v. Village of Suffern*, 268 F.3d 65, 69-70 (2d Cir. 2001) (affirming district court's grant of summary judgment to defendants on false arrest claim because statements from alleged assault victims established probable cause); *see, e.g.*, *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("We have previously held that police officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed."); *Stokes v. City of N.Y.*, 05-cv-0007(JFB)(MDG), 2007 WL 1300983, at *5 (E.D.N.Y. May 3, 2007) ("[T]he Second Circuit and other courts have found probable cause to exist where, in the absence of circumstances raising doubts as to the victim's veracity, the police received information directly from a purported victim of a crime without a formal written complaint.").

Although plaintiff argues that the circumstances surrounding the incident—namely, plaintiff's allegations that Donna Nash had stated she would "get [plaintiff] out of the house by whatever means necessary," (Pls.' 56.1 ¶ 4), and her alleged romantic relationship with the neighbor—create an issue of fact as to whether the officers should have doubted her veracity, the Court disagrees. There is no evidence that the responding officers had any knowledge of a romantic relationship between the neighbor and Donna Nash or, even if they were aware of that relationship, how that relationship would have undermined the veracity of her sworn statement. Plaintiff also argues that Donna Nash's refusal of medical attention at the scene should have prompted further investigation by officers (Pls.' 56.1 ¶ 18), but it remains undisputed that she alleged that the assault occurred and complained of resulting pain in her jaw (Reissman Dec., Ex. B.). Accordingly, the Court concludes that the record contains no evidence of any information made known to the officers that would have been sufficient to undermine the credibility of Donna Nash's sworn report of domestic abuse.

Thus, the undisputed facts establish that, before arresting plaintiff, officers had learned that Donna Nash complained that plaintiff had assaulted her and threatened her life, had made a sworn statement to that effect, and that no facts were known to the officers at the scene that would undermine the credibility of Donna Nash's statements. Based on these undisputed facts, officers had probable cause to arrest plaintiff for assault and menacing as a matter of law. Under New York law, the crime of assault in the third degree requires that defendant either (1) "[w]ith intent to cause physical injury, . . . causes such injury," (2) "recklessly causes physical injury," or (3) "[w]ith criminal negligence, . . . causes physical injury . . . by means of a deadly weapon or a dangerous instrument." *See* N.Y. Penal L. § 120.00. The crime of menacing in the third degree requires that defendant, "by physical menace, . . . place[] or attempt[] to place another person in fear of death, imminent serious physical injury or physical injury." N.Y. Penal L. § 120.15. Here, it is undisputed that the officers knew that Donna Nash claimed plaintiff grabbed her by the jaw, causing significant pain, during an argument regarding their contentious pending divorce. Officers could reasonably infer plaintiff's intent to cause the injury from the nature of Donna Nash's allegations, but even absent intent to injure, the circumstances support, at the very least, recklessness by plaintiff

resulting in Donna Nash's injuries. *Cf. Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989) (noting that "it is impossible" for arresting officer to say with certainty that an individual possessed a given state of mind and finding that officer was "entitled to rely on the implications of the information known to him in assessing whether" arrestee possessed a particular mental state). With regard to menacing, is it undisputed that Donna Nash claimed that plaintiff said "I will kill you, I will gut you," in the aftermath of a physical altercation, after which she believed that plaintiff had gone to his mother's house to retrieve his firearms. (Reissman Dec., Ex. B at 2.) Taken together, these undisputed facts gave the responding officers probable cause to believe that plaintiff had committed the crimes of assault in the third degree and menacing in the third degree.

Plaintiff asserts that there are disputed issues of material fact as to whether the responding officers had probable cause. First, plaintiff faults officers for failing to investigate further before effectuating his arrest, particularly in failing to interview plaintiff and the Nash children. The Court disagrees. Probable cause does not require that the police rule out innocent explanations for the suspect's activities. *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); *Curley*, 268 F.3d at 70 ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him."); *Krause*, 887 F.2d at 372 ("It is up to the factfinder to determine whether a defendant's story holds water, not the arresting officer. Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge, or jury.") (internal citation omitted); *Rae v. Cty. of Suffolk*, 693 F. Supp. 2d 217, 225 (E.D.N.Y. 2010) ("While, in hindsight, it may be that Voight could have asked additional questions, or conducted a fuller investigation, the role of the court is not to overly scrutinize the decisions of police officers from its vantage in chambers, long after those decisions were made, but to determine whether the officers acted reasonably and in compliance with what the law requires based on what they knew at the time.").

In a related point, plaintiff argues that defendants' decision not to investigate further was based on bias created by the relationships he alleges to have existed between responding officers and the neighbor (who was Donna Nash's alleged paramour), or pressure placed on them by others in the NCPD with whom the neighbor had a relationship as a volunteer firefighter. In particular, plaintiff argues that the "coincidences" of the relationships he alleges are in themselves triable issues of fact. As noted above, the evidence in the record does not support these conclusory allegations and speculative theories. Even assuming *arguendo* that one or more of the responding officers had a personal relationship with the neighbor or had been contacted by someone who did, these facts do not ultimately affect the validity of the officers' finding of probable cause in this case because, under New York law, Donna Nash's statement as a complaining witness was sufficient to create probable cause absent circumstances creating doubt as to her veracity at the scene. As noted *supra*, even assuming *arguendo* that officers were aware of a relationship between Donna

9

Nash and the neighbor, there is no evidence that any such relationship undermined her veracity with respect to her sworn statement of domestic abuse.

Given these undisputed facts, no reasonable jury could find that the responding officers lacked probable cause to arrest plaintiff. In sum, based upon the uncontroverted evidence in the record, defendants are entitled to summary judgment on plaintiff's § 1983 false arrest claim.

### b. Malicious Prosecution

The Court also concludes that defendants should be granted summary judgment on plaintiff's malicious prosecution claim. To succeed on a malicious prosecution claim under § 1983, a plaintiff must show (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice. *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009); *Drummond v. Castro*, 522 F. Supp. 2d 667, 677-78 (S.D.N.Y. 2007). Malicious prosecution claims under § 1983 also require that there "'be a seizure or other 'perversion of proper legal procedures' implicating the claimant's personal liberty and privacy interests under the Fourth Amendment.'" *Conte v. Cty. of Nassau*, 06-CV-4746 (JFB)(ETB), 2008 WL 905879, at *11 (E.D.N.Y. Mar. 31, 2008) (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)).

Here, the first two elements are satisfied. It is undisputed that a criminal proceeding was instituted against plaintiff and that this proceeding terminated in his favor. As to the third element, "probable cause" for malicious prosecution purposes is assessed "'in light of facts known or reasonably believed at the time the prosecution was initiated,'" and not at the time of arrest. *Drummond*, 522 F. Supp. 2d at 678 (quoting *Carson v. Lewis*, 35 F. Supp. 2d 250, 263 (E.D.N.Y. 1999)). However, if the police had probable cause to arrest, a plaintiff in a malicious prosecution case must show that facts emerged following the arrest to vitiate probable cause. *Id.* (granting summary judgment to defendants on malicious prosecution claim because police had probable cause to arrest plaintiff and plaintiff's alibi and character reference from employer did not defeat probable cause); *see also Torraco v. Port Auth. of N.Y. & N.J.*, 539 F. Supp. 2d 632, 652-53 (E.D.N.Y. 2008) (granting summary judgment to defendants on malicious prosecution claim because probable cause existed for arrest and plaintiff's allegations regarding additional, post-arrest information were "speculation"); *Coyle v. Coyle*, 354 F. Supp. 2d 207, 213 (E.D.N.Y. 2005) (dismissing malicious prosecution claim where defendants had probable cause to arrest plaintiff and were not made aware of any facts that would negate probable cause). In this case, plaintiff has not made the Court aware of any post-arrest facts that would alter the initial finding of probable cause at the time of the arrest. As such, the Court grants summary judgment to the defendants on this claim.

### c. Qualified Immunity

Even assuming *arguendo* that the responding officers lacked probable cause and the arrest and prosecution violated plaintiff's rights under the Fourth and Fourteenth Amendments, they would still be entitled to summary judgment on qualified immunity grounds. As set forth below, even taking plaintiff's version of the information available

10

to the police that day as true and drawing all reasonable inferences in plaintiff's favor, officers of reasonable competence could disagree on whether the probable cause test was met. Thus, qualified immunity is warranted.

The doctrine of qualified immunity shields government officials from civil liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As the Second Circuit has noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)). Thus, qualified immunity is not merely a defense but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the availability of qualified immunity should be decided by a court "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

An arresting officer is entitled to qualified immunity on claims of false arrest and malicious prosecution if either: (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met. *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007); *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999) (quoting *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991)). The issue of "reasonableness" for purposes of probable cause is distinct from the issue of "reasonableness" for purposes of qualified immunity. *See Kerman v. City of N.Y.*, 374 F.3d 93, 116 (2d Cir. 2004); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("It simply does not follow immediately from the conclusion that it was firmly established that warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment that [the] search was objectively legally unreasonable.")). In *Anderson*, the Supreme Court held that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable." 483 U.S. at 641.

The Second Circuit has defined this standard, which is often referred to as "arguable probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held

11

personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001) (quotations and citations omitted) (emphasis in original). Moreover, under this standard, "an 'arresting officer is entitled to qualified immunity as a matter of law if the *undisputed facts* and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met.'" *McClellan v. Smith*, 439 F.3d 137, 147-48 (2d Cir. 2006) (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987)).

For the same reasons that the Court concludes that probable cause existed to arrest plaintiff, the Court also finds that responding officers, at the very least, had arguable probable cause to arrest plaintiff. Both the Supreme Court and the Second Circuit have emphasized that "[n]ormally, it is only the 'plainly incompetent or those who knowingly violate the law'—those who are not worthy of the mantle of the office—who are precluded from claiming the protection of qualified immunity." *Moore v. Andreno*, 505 F.3d 203, 214 (2d Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Here, there is no evidence that the responding officers' conduct was plainly incompetent or that they engaged in a knowing violation of the law, and, thus, they are entitled to qualified immunity. As noted earlier, it is undisputed that, before arresting plaintiff, Donna Nash had alleged in a sworn statement that: (1) during an argument, plaintiff grabbed her face, injuring her jaw; (2) plaintiff threatened her life; and (3) she feared for her safety and that of her daughter and that there were no circumstances at the scene that gave officers reason to doubt the veracity of her report. On these facts, even drawing all reasonable inferences in plaintiff's favor, officers "could have reasonably believed that probable cause existed" to arrest plaintiff. *Cerrone*, 246 F.3d at 203.

Accordingly, even assuming *arguendo* that probable cause was lacking, responding officers are entitled to summary judgment on qualified immunity grounds because there was arguable probable cause to arrest.

### 3. *Monell* Claims

Plaintiff also asserts § 1983 claims against Nassau County for failing to adequately supervise, train, and punish police officers with regard to probable cause required for arrests.[5] As set forth below, the County is entitled to summary judgment on these claims.

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipal entity may be held liable under § 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Monell*, 436 U.S. at 694-95; *Patterson v. Cty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733-36 (1989) and *Monell*, 436 U.S. at 692-94). "The policy or custom need not

---

[5] First, the Court notes that plaintiff failed to oppose defendants' motion on these claims and accordingly has the discretion to deem them abandoned, but it has nonetheless conducted an analysis on the merits. Second, to the extent plaintiff also seeks to hold the individual defendants liable on these claims in their official capacities, those claims are duplicative of the municipal liability claim lodged against the County. *See, e.g.*, *Tsotesi v. Bd. of Educ.*, 258 F. Supp. 2d 336, 338 n.10 (S.D.N.Y. 2003) (dismissing claims against officials sued in their official capacities where plaintiff also sued municipality (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985))); *see also Monell*, 436 U.S. at 691 (holding that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent").

be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). A policy, custom, or practice of the municipal entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*, 375 F.3d at 226 (quoting *Kern*, 93 F.3d at 44). However, a municipal entity may only be held liable where the entity *itself* commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

Here, because probable cause existed for plaintiff's arrest—and, therefore no constitutional violation occurred—no *Monell* claim can lie against Nassau County. *See, e.g.*, *Vippolis v. Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that the municipality was, in the language of the statute, the 'person who . . . subjected, or cause[d] [him] to be subjected,' to the deprivation of his constitutional rights." (citing 42 U.S.C. § 1983)); *Wray v. City of N.Y.*, 490 F.3d 189, 196 (2d Cir. 2007) (granting summary judgment to city on *Monell* claim because police officer's conduct did not deprive plaintiff of his constitutional rights); *Torraco*, 539 F. Supp. 2d at 652 ("[S]ince the individual defendants did not violate plaintiffs' rights, there can be no liability against the Port Authority."). Therefore, the Court grants defendants' motion for summary judgment as to plaintiff's *Monell* claims.[6]

---

[6] The Court also concludes that, even assuming *arguendo* that the absence of an underlying constitutional violation did not preclude the *Monell* claims in this case, the County would still be entitled to summary judgment on those claims because of the absence of any evidence of an unconstitutional policy, practice, or custom by the County, or a failure to supervise or train, as it relates to the issues in this case. Accordingly, there is no evidence to support any *Monell* claim in this case.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Dated: March 25, 2019
Central Islip, New York

\* \* \*

Plaintiff is represented by Katie E. Giusti and Robert F. Giusti of Robert Giusti, Esq., & Associates, PLLC, 42-40 Bell Blvd, Suite 601, Bayside, NY 11361. Defendants are represented by Ralph J. Reissman, Nassau County Attorney's Office, One West Street, Mineola, NY 11501.

13